IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VALHALLA MOTION PICTURES, INC., )<br>a California corporation; and VALHALLA )<br>ENTERTAINMENT, INC., a California )<br>Corporation d/b/a VALHALLA )<br>ENTERTAINMENT and VALHALLA )<br>TELEVISION, )<br> )<br>   Plaintiffs, )<br> )<br>v. )<br> )<br>VALHALLA STUDIOS, LLC, a Delaware )<br>limited liability company; and VALHALLA )<br>STUDIOS ATLANTA, LLC, a Delaware )<br>limited liability company, )<br> )<br>   Defendants. ) | CIVIL ACTION FILE<br><br>NO. _____<br><br>DEMAND FOR JURY TRIAL |

## **COMPLAINT**

Plaintiffs Valhalla Motion Pictures, Inc. and Valhalla Entertainment, Inc. d/b/a Valhalla Entertainment and Valhalla Television (collectively, "Valhalla" or "Plaintiffs") for their Complaint against Defendants Valhalla Studios, LLC and Valhalla Studios Atlanta, LLC (collectively, "Defendants") state as follows:

1.     This is an action arising from Defendants' willful infringement of Valhalla's family of trademarks in the fields of motion picture film and television show production.  Defendants are deceiving the public by using the name

"Valhalla Studios" for under-construction motion picture and television production facilities in Atlanta. Defendants' unauthorized use of the "Valhalla" name creates a misleading association between the Defendants' production facilities and the existing, thriving, and famous family of Valhalla motion picture and television entities. The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; the Georgia Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370, *et seq.*; the Georgia Anti-Dilution Statute, Ga. Code Ann. § 10-1-451(b); and the common law of Georgia.

## INTRODUCTION

2.      Valhalla has, for nearly 20 years, developed and produced extremely successful major motion pictures and television shows, including the current television hit, The Walking Dead. That show, which films in and around Atlanta, is a cultural phenomenon and the most-watched show on cable (The Nielsen Company, adults 18-49 Sunday, April 3, 2016), regularly outdrawing live sports. The Walking Dead has spawned two extremely successful cousin shows: Fear The Walking Dead and Talking Dead, both of which also are among the top-rated cable shows (The Nielsen Company, adults 18-49 Sunday, April 3, 2016 and Sunday, September 18, 2016).

3.      In the entertainment industry and beyond, Valhalla is closely associated with The Walking Dead and its many other successful motion picture and television projects.

4.      Looking to capitalize on Valhalla's success with The Walking Dead and that show's Atlanta ties, Defendants have developed television and motion picture facilities in Atlanta that they have named "Valhalla Studios."  Defendants' use of the name "Valhalla Studios" has already caused significant confusion between the marquee Valhalla brand and Defendants' production facilities. Defendants have not—and cannot—deny that this confusion has occurred.

5.      Promptly upon learning of Defendants' Atlanta production facilities (a nascent project, currently under construction), Valhalla contacted Defendants and requested that they cease and desist their use of the "Valhalla" name.  When Defendants declined, Valhalla sent a formal cease-and-desist letter, again requesting that Defendants stop their infringement of, and attempt to trade on, Valhalla's trademarks.  Again, Defendants refused.

6.      With Defendants' having refused to resolve their improper use of Valhalla's trademarks, Valhalla was left with no choice but to bring this action, invoking and requesting the Court's assistance to stop Defendants' wrongful conduct.

## THE PARTIES

7.     Valhalla Motion Pictures, Inc. is a California corporation with its principal place of business in Los Angeles, California.

8.     Valhalla Entertainment, Inc. d/b/a Valhalla Entertainment and Valhalla Television is a California corporation with its principal place of business in Los Angeles, California.

9.     Valhalla Studios, LLC is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.

10.     Valhalla Studios Atlanta, LLC is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

11.     This court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the claims under Georgia law pursuant to 28 U.S.C. § 1367(a).

12.     This court has personal jurisdiction over Defendants because each of the Defendants resides and/or maintains a place of business in this judicial district; causes injury to Plaintiffs by its acts in this judicial district; and/or regularly conducts or solicits business in this judicial district.  Defendants' Atlanta

4

production facilities are being constructed in this judicial district at 1415 Constitution Rd SE, Atlanta, GA 30316.

13.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b).

## PLAINTIFFS' BUSINESS AND TRADEMARKS

14.     Valhalla Motion Pictures, Inc. and Valhalla Entertainment, Inc. d/b/a Valhalla Entertainment and Valhalla Television are motion picture, television, comic book, and transmedia development and production companies owned and operated by entertainment industry veteran Gale Anne Hurd.  Ms. Hurd is a distinguished, long-time Board member and officer of the Producers Guild of America and a former Board member of the Academy of Motion Picture Arts and Sciences.

15.     Valhalla Motion Pictures, Inc. has produced some of the most celebrated science fiction action and adventure motion picture projects of all time, including the iconic films Armageddon, The Incredible Hulk, and The Punisher.

16.     Valhalla Entertainment, Inc. d/b/a Valhalla Entertainment and Valhalla Television produces top-rated television series The Walking Dead, as well as related shows Fear The Walking Dead and Talking Dead, and the recently debuted series Falling Water.  Now entering its seventh season, The Walking Dead has earned many awards and nominations including two Emmys for Prosthetic

Makeup, Best Sound Editing from the MPSE, eleven Saturn Awards including Best Cable Series and Best Presentation on Television, two AFI "TV Program of the Year" awards, an Eddie from the American Cinema Editors, Critics' Choice Award for Most Bingeworthy Show, three People's Choice Awards, and the WGA's New Media Writing Award.

17.     Valhalla has built a strong and respected reputation in the entertainment industry, throughout the United States, and around the world.

18.     Valhalla Motion Pictures, Inc. owns the exclusive trademark and service mark rights to the distinctive VALHALLA MOTION PICTURES trademark and service mark, having used the mark in connection with entertainment related goods and services since 1997.

19.     Valhalla Entertainment, Inc. owns the exclusive trademark and service mark rights to the distinctive VALHALLA ENTERTAINMENT trademark and service mark, having used the mark in connection with entertainment related goods and services since 2010.

20.     Valhalla Entertainment, Inc. owns the exclusive trademark and service mark rights to the distinctive VALHALLA TELEVISION trademark and service mark, having used the mark in connection with entertainment related goods and services since 2012.

21.     In addition to Plaintiffs' extensive common law rights, Valhalla

Motion Pictures, Inc. owns the following United States trademark registrations:

| REGISTRATION | SERVICES |
|---|---|
| <br>Reg. No. 4,212,384<br>Filed: May 2, 2011<br>Registered: Sept. 25, 2012 | IC 41: Motion picture film production<br>First use: 1997 |
| <br>Reg. No. 4,238,523<br>Filed: May 2, 2011<br>Registered: Nov. 6, 2012 | IC 41: Television show production.<br>First use: 2012 |

Copies of these registrations are attached hereto as Exhibits A and B.

22.     Collectively, the VALHALLA MOTION PICTURES mark, the

VALHALLA ENTERTAINMENT mark, the VALHALLA TELEVISION mark,

and the marks identified in the above United States trademark registrations are

referred to as the "Valhalla Marks" herein.

23.     Valhalla has made, and continues to make, a substantial investment of

time, effort, and expense in the promotion of the Valhalla Marks and products and

services offered under the Valhalla Marks.  For example, one or more of the

Valhalla Marks is seen at the conclusion of each episode of The Walking Dead

(one of the most popular television series for several years) and Fear The Walking

Dead.  One or more of the Valhalla Marks also has appeared in the United States

and worldwide on some of the most successful motion pictures, including the

blockbuster motion picture Armageddon (1998) and the popular films Virus

(1999), Clockstoppers (2002), Hulk (2003), The Punisher (2004), and Aeon Flux

(2005).  The domestic box office receipts for Valhalla's films alone exceed $500

million.

24.     In addition, Valhalla regularly promotes its products, services, and the

Valhalla Marks to tens of thousands of people via social networks, including

Facebook (facebook.com/ValhallaEntertainmentInc) and Twitter (@ValhallaPics),

and through its website (valhallamotionpictures.com) and its blog

(valhallaentertainment.wordpress.com).  *See* Exhibit C.

25.    News stories featuring Valhalla's businesses are regularly published

in leading entertainment media outlets including The Hollywood Reporter,

Deadline, Variety, and the Los Angeles Times.  *See* Exhibit D.

26.    The Valhalla Marks are unique, distinctive, and famous in the United

States, and particularly in Georgia where The Walking Dead is filmed.

27.    As a result of Valhalla's continuous and exclusive use and promotion

of the Valhalla Marks, as well as the uniqueness and distinctiveness of the Valhalla

Marks, the public and members of the trade associate the Valhalla Marks with a

single source of the goods and services provided under the Valhalla Marks.

28.    The Valhalla Marks are of significant and incalculable value to

Valhalla.

29.    The public and members of the trade are likely to believe that Valhalla

would naturally include in its offerings – or expand its offerings to include –

studios and other facilities for the production of motion pictures and television

shows.

## DEFENDANTS' INFRINGING CONDUCT

30.    On or about August 26 and 30, 2016, the Atlanta Business Chronical published articles about a new television and motion picture facility that Defendants are building in Atlanta, Georgia and are calling "Valhalla Studios." *See* Exhibit E.

31.    "Valhalla Studios" has no connection with Valhalla Motion Pictures, Inc. or Valhalla Entertainment, Inc. d/b/a Valhalla Entertainment and Valhalla Television.  Defendants have not obtained permission from Valhalla to display, use, advertise, or market the name "Valhalla" or to suggest any affiliation or connection with Valhalla for any purpose.

32.    Valhalla and Defendants both operate, advertise, market, and exist in the same motion picture film and television show production industry.

33.    There is no need for Defendants to use the "Valhalla Studios" name in connection with its business.

34.    Until Defendants announced their plans to use the "Valhalla Studios" name, to Plaintiffs' knowledge no other entity was using the name "Valhalla" in connection with motion picture film and television show production, besides Plaintiffs.

35.    Defendants' unauthorized use of the "Valhalla Studios" name has caused confusion.  Since publication of the above-referenced Atlanta Business Chronical articles, Valhalla and its affiliates have received numerous communications associating Defendants' studios with the work and businesses of Valhalla and its affiliates.

36.    Defendants unauthorized use of the "Valhalla Studios" name is likely to continue causing confusion.

37.    This confusion is especially likely because The Walking Dead, a Valhalla-produced show, has filmed in and around Atlanta for over seven years. Last season, The Walking Dead averaged nearly 19 million viewers, leading all television shows in the 18-49 year old demographic.  The Walking Dead and its companion show, Fear The Walking Dead, are broadcast around the world to 128 countries.

38.    Fans from around the world travel to the Atlanta area to visit the filming locations of The Walking Dead.  Indeed, the show is so popular and so connected with Atlanta, that it has spawned tours of the Atlanta area for the show's fans to visit filming locations.

39.    Both fans and members of the motion picture and television industry know and associate "Valhalla" with Valhalla Motion Pictures, Inc. and Valhalla

11

Entertainment, Inc. d/b/a Valhalla Entertainment and Valhalla Television.  That is particularly the case in connection with television and motion picture production in Atlanta, based in part on the local production of The Walking Dead series.

40.    Defendants are using and displaying the name "Valhalla" to promote their television and motion picture production facilities in the United States, including in the Atlanta area.

41.     Defendants knew or should have known of Valhalla's prior use and registration of the Valhalla Marks at the time they began using the "Valhalla Studios" name.  A simple search on the USPTO website would have revealed Valhalla's registrations, and a simple internet search would have revealed Valhalla's prior use in commerce and existing website at valhallamotionpictures.com.

42.    Upon information and belief, Defendants knew, or should have known, that their use of the "Valhalla Studios" name would likely cause confusion, mistake, or deception among the relevant public.

43.    Prior to filing this action, Valhalla notified Defendants of Valhalla's exclusive rights to the Valhalla Marks and the "Valhalla" name, and demanded that Defendants cease and desist using the name "Valhalla" in connection with their

television and motion picture production facilities.  Defendants have disregarded Valhalla's demand and refused to comply.

44.    Upon information and belief, Defendants' wrongful acts alleged herein have been deliberate, willful, and in disregard of Valhalla's rights.

45.    Upon information and belief, Defendants' wrongful acts alleged herein have permitted and/or will permit Defendants to earn revenues and profits on the strength of Valhalla's marketing, advertising, consumer recognition, and goodwill associated with its Valhalla Marks.

46.    By reason of Defendants' wrongful acts alleged herein, Valhalla is likely to suffer, has suffered, and will continue to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Defendants and/or the goods and services offered by Defendants are affiliated with, sponsored by, approved by, or originate from Valhalla.

47.    By reason of Defendants' wrongful acts alleged herein, Valhalla is likely to suffer, has suffered, and will continue to suffer dilution of the distinctive quality of the Valhalla Marks.

48.    Defendants have intentionally and knowingly used, and continue to use, the name "Valhalla" in connection with their television and motion picture

production facilities for the purpose of trading off Valhalla's excellent reputation and exploiting the goodwill associated with the Valhalla Marks.

49.    Defendants' studio project is still under construction and has not developed a reputation or goodwill under the "Valhalla Studios" name.  The infringing "Valhalla Studios" name could be changed with minimal impact on Defendants' business.

50.    The harm to Valhalla caused by the use and promotion of the infringing "Valhalla Studios" name by Defendants is irreparable and will continue unless and until this Court enjoins Defendants.

## FIRST CLAIM
### Federal Trademark Infringement (15 U.S.C. § 1114(1))
### (Against All Defendants)

51.    Valhalla restates and re-alleges paragraphs 1-50 of this Complaint.

52.    Defendants' unauthorized use of the "Valhalla" name to identify, advertise, market, and promote Defendants' television and motion picture production facilities and associated services constitutes a use in commerce that is likely to cause confusion, mistake, and deception as to (i) the source or origin of Defendants' television and motion picture production facilities, (ii) whether Defendants are affiliated with Valhalla, and (iii) whether Defendants' television and motion picture production facilities are authorized by Valhalla.

53.     Defendants' conduct as described above constitutes infringement of Plaintiffs' federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54.     Upon information and belief, Defendants' use of the "Valhalla" name was undertaken and/or continued with full knowledge of Valhalla's rights, thus constituting willful infringement.

55.     Valhalla has been damaged by the wrongful conduct of Defendants as alleged above.

56.     By reason of Defendants' wrongful conduct, Valhalla is entitled to recover Defendants' wrongful profits and Valhalla's actual damages, plus enhanced damages and attorneys' fees and costs as an exceptional case within the meaning of the Lanham Act, 15 U.S.C. § 1117(a).

57.     Defendants' wrongful conduct has caused and, without judicial intervention, will continue to cause Valhalla irreparable harm for which there is no adequate remedy at law.

**SECOND CLAIM**
**Unfair Competition (15 U.S.C. § 1125(a))**
**(Against All Defendants)**

58.     Valhalla restates and re-alleges paragraphs 1-50 of this Complaint.

59.    Defendants' unauthorized use of the "Valhalla" name in connection with television and motion picture production constitutes unfair competition.

60.    Defendants' unauthorized use of the "Valhalla" name in connection with television and motion picture production constitutes use in commerce of a false or misleading designation of origin that is likely to deceive, to cause mistake, or to cause confusion as to the association of Defendants' television and motion picture production facilities with Valhalla and the Valhalla Marks, and as to Valhalla's affiliation with Defendants and its sponsorship of Defendants' activities.

61.    Defendants' conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.    Upon information and belief, Defendants' use of the "Valhalla" name was undertaken and/or continued with full knowledge of Valhalla's rights, thus constituting willful unfair competition.

63.    Valhalla has been damaged by the wrongful conduct of Defendants as alleged above.

64.    By reason of Defendants' wrongful conduct, Valhalla is entitled to recover Defendants' wrongful profits and Valhalla's actual damages, plus enhanced damages and attorneys' fees and costs as an exceptional case within the meaning of the Lanham Act, 15 U.S.C. § 1117(a).

65.     Defendants' wrongful conduct has caused and, without judicial intervention, will continue to cause Valhalla irreparable harm for which there is no adequate remedy at law.

### THIRD CLAIM
### Deceptive Trade Practices Under The Georgia Deceptive Trade Practices Act
### (O.C.G.A. § 10-1-370, *et seq.*)
### (Against All Defendants)

66.     Valhalla restates and re-alleges paragraphs 1-50 of this Complaint.

67.     Defendants' unauthorized use of the "Valhalla" name in connection with television and motion picture production constitutes a deceptive trade practice under the Georgia Deceptive Trade Practices Act, in that such use allows Defendants to pass off goods and services of Defendants as goods and services of Valhalla; causes a likelihood of confusion or misunderstanding as to the source, sponsorship or approval of Defendants' goods and services; causes likelihood of confusion or misunderstanding as to the affiliation, connection, or association of Defendants with Valhalla; and in other ways.

68.     Upon information and belief, Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Valhalla Marks and to engage in deceptive trade practices, to the irreparable injury of Valhalla.

69.     Defendants are causing, and will continue to cause, a likelihood of confusion and misunderstanding and irreparable injury to Valhalla's goodwill and business reputation, in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq*.  Valhalla is therefore entitled to injunctive relief, costs, and reasonable attorneys' fees.

**FOURTH CLAIM**
**Trademark Dilution Under The Georgia Anti-Dilution Statute**
**(O.C.G.A. § 10-1-451(b))**
**(Against All Defendants)**

70.     Valhalla restates and re-alleges paragraphs 1-50 of this Complaint.

71.     The Valhalla Marks are inherently distinctive.  Valhalla has extensively and continuously promoted and used the Valhalla Marks in the United States, and the Valhalla Marks thereby also acquired distinctiveness.

72.     Defendants' unauthorized use of the "Valhalla" name in connection with television and motion picture production is likely to injure Valhalla's business reputation or to dilute the distinctiveness of the Valhalla Marks by eroding the public's exclusive identification with Valhalla of its distinctive, well-known trademarks and service marks, and otherwise lessen the capacity of the Valhalla Marks to identify and distinguish Valhalla's products and services.

73.     Upon information and belief, Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with

the Valhalla Trademarks and to cause dilution of the Valhalla Trademarks, all to the irreparable injury of Valhalla.

74.     Defendants are causing and will continue causing irreparable injury to Valhalla's goodwill and business reputation, and dilution of the distinctiveness and value of the Valhalla Marks in violation of the Georgia anti-dilution statute, O.C.G.A. § 10-1-451(b).  Valhalla is therefore entitled to injunctive relief and reasonable attorneys' fees.

## FIFTH CLAIM
### Georgia Common Law Unfair Competition
### (Against All Defendants)

75.     Valhalla restates and re-alleges paragraphs 1-50 of this Complaint.

76.     Defendants' actions constitute unfair competition under the common law of Georgia.  Defendants' unauthorized use of the "Valhalla" name in connection with television and motion picture production has caused, and unless enjoined will continue to cause, confusion or misunderstanding among the consuming public as to the affiliation, connection, or association between Defendants and Valhalla and/or as to the sponsorship or approval by Valhalla of Defendants' products and services.

77.     Upon information and belief, Defendants have acted in bad faith by intentionally adopting an infringing name to profit from the goodwill associated with the Valhalla Marks.

78.     Valhalla and the public have been and are likely to continue to be damaged as a result of Defendants' unfair competition.  Unless enjoined by this Court, Defendants will continue the foregoing unfair competition, causing Valhalla immediate and irreparable damage.

79.      Upon information and belief, Defendants have and will continue to profit from their unfair competition.  Defendants' actions are causing and will cause Valhalla monetary damage in amounts presently unknown but to be determined at trial.

80.     Valhalla has no adequate remedy at law.  Valhalla will be irreparably injured because of its loss of goodwill and reputation stemming from Defendants' actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Valhalla prays for relief as follows:

1.     For judgment in favor of Valhalla and against Defendants on all of Valhalla's claims;

2.     For a preliminary and permanent injunction prohibiting Defendants and each of their respective owners, subsidiaries, officers, directors, agents, servants, employees, attorneys, and all others in active concert or participation with them from the following:

a.     further use of the "Valhalla" name, either alone or in combination with other words, names, or symbols, on or in connection with the advertisement, marketing, offering for sale, or sale of any products or services;

b.     performing or committing any other acts falsely representing Defendants' products or services that are likely to cause confusion or mistake in the mind of the public or trade, or to lead the public or trade to believe that Defendants' products or services come from or are the products or services or Valhalla, or are somehow sponsored by, associated with, affiliated with, or connected with Valhalla, or that there is some relation, association, affiliation, or connection between Valhalla and Defendants;

c.     from otherwise unfairly competing with Valhalla; and

d.     from diluting the distinctive quality of the Valhalla Marks;

3.     For an order requiring all of Defendants' advertising materials using the term "Valhalla" to be seized and impounded and that all of these items be destroyed;

4     For an award of Valhalla's actual damages and an accounting of and disgorgement of Defendants' profits;

5.     For enhanced damages and/or profits awarded to Valhalla pursuant to 15 U.S.C. § 1117(a) and other applicable law according to proof at trial;

6.     For Valhalla's reasonable attorneys' fees, costs, expenses, and interest pursuant to 15 U.S.C. § 1117(a), O.C.G.A. § 10-1-373(b), and other applicable law, including the common law of Georgia; and

7.     For such other and further relief as this Court may deem just and appropriate.

## **DEMAND FOR JURY TRIAL**

Valhalla demands trial by jury of all issues so triable.

//

//

//

//

//

DATED: October 18, 2016

Respectfully submitted,

KING & SPALDING LLP

  s/ *Holmes J. Hawkins, III*

Holmes J. Hawkins, III
  GA Bar No. 338681
Russell E. Blythe
  GA Bar No. 141379
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5134
hhawkins@kslaw.com
rblythe@kslaw.com

Of Counsel:

Patrick E. Breen
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  pbreen@allenmatkins.com

Counsel for Plaintiffs VALHALLA
MOTION PICTURES, INC. and
VALHALLA ENTERTAINMENT, INC.
d/b/a VALHALLA TELEVISION